UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL STEVEN HOLMES,

        Plaintiff,

v.

HEIDI SMITH et al.,

        Defendants.
_____/

Case No. 1:18-cv-973

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Woodland Correctional Facility (WCC) in Whitmore Lake, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility

(MTU) in Ionia, Michigan. Plaintiff sues Heidi Smith, a nurse practitioner or supervisor at MTU; Heather Bittner, a nurse, nurse's aide, or supervisor at MTU; Subrina Aiken, a Clinical Administrative Assistant at the MDOC Jackson Health Care Office; Peter Sices, a medical provider employed by Corizon Health Services, Inc., and assigned to MTU; and Corizon Health Services, Inc.

Plaintiff alleges that Defendants, from April 28, 2017, through April 2018, violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical needs. Plaintiff provides a detailed chronology of his contacts with MTU healthcare providers during the relevant time period.

Plaintiff has attached portions of his medical record to his complaint. The documents reveal that during March of 2017, Plaintiff was seen by a healthcare provider outside of the facility. The report from the facility reveals that Plaintiff had undergone multiple surgical procedures in the twenty-eight months preceding his visit. At the time of his visit, he was recovering from one of those surgeries. The outside facility prescribed Norco for pain. The healthcare provider noted that a recent CT scan revealed arthritis-like changes in his lower back. During the visit, the provider performed an MRI and X-rays of Plaintiff's back.

After Plaintiff's visit to the outside healthcare provider he complained of pain to, and sought pain medication from, MDOC healthcare staff several times. On April 25, 2017, Plaintiff was transferred to MTU. On April 28, 2017, Plaintiff raised the issue of <u>back</u> pain with MTU staff for the first time. He was scheduled for a visit with a registered nurse and directed to continue taking an anti-inflammatory for pain. On May 1, Plaintiff submitted another healthcare request regarding pain. He was scheduled to see the medical provider that day. The medical provider and Plaintiff discussed Plaintiff's pain issues. The provider directed Plaintiff to continue

with a non-steroidal anti-inflammatory and considered a consult with the Pain Management Committee. The provider scheduled a follow-up appointment for May 22.

On May 4, 2017, Plaintiff was assessed by the nursing staff and provided a temporary special accommodation detail pending his May 22 appointment with the medical provider. On May 6, Plaintiff submitted another healthcare request for a special accommodation. Plaintiff discussed the matter with the nurse, but they determined the detail from May 4 already provided the accommodation.

On May 13 and 18, Plaintiff again complained regarding pain. He was directed to wait until his appointment with the medical provider on May 22. On May 22, Plaintiff was seen by the medical provider and prescribed acetaminophen. A follow-up visit was scheduled for June 22. On May 23, Plaintiff again complained of pain. On May 25 and 26, Plaintiff asked for his accommodations to be continued. They were continued and a chart review was sent to the medical provider to determine if a detail for an extra pillow was medically indicated.

On May 30, Plaintiff again complained of pain. An appointment with nursing staff was scheduled. That day, the medical provider also completed a chart review, but deferred a decision on the extra pillow until the scheduled appointment. On June 1, nursing staff saw Plaintiff. The plan of care from May 22 was continued.

On June 22, as scheduled, Plaintiff saw the medical provider. The medical provider concluded that further work-up was warranted. The provider ordered ankle-brachial indexes and scheduled a follow-up appointment. The follow-up appointment occurred on June 27. The provider submitted for approval a request for an MRI of Plaintiff's spine. The provider changed Plaintiff's accommodations to include a bottom bunk. On June 29, the MRI request was deferred in favor of an EMG, which was approved on June 30.

Plaintiff complained again on June 30. A chart review was scheduled; acetaminophen was continued. Plaintiff was seen again on July 3. A chart review was scheduled because Plaintiff was suffering from swelling and rash. On July 4, acetaminophen was discontinued after the chart review because of Plaintiff's suspected allergic reaction.

On July 26, 2017, the EMG was completed offsite. The test showed radiculopathy. On August 11, during Plaintiff's chronic care visit, the medical provider discussed the results with Plaintiff. They talked about pain medications. Plaintiff refused acetaminophen. Plaintiff's gastrointestinal problems precluded continuous use of non-steroidal anti-inflammatory medications. The medical provider started the Pain Management Committee paperwork to seek alternative pain medications and requested approval to send Plaintiff to see a neurosurgeon.

On August 14, the request for neurosurgical consult was deferred in favor of an MRI. On August 25, the referral to the Pain Management Committee was approved. Plaintiff was seen by nursing staff on that date. He reported his back pain had subsided. He was seen again on August 26 and 27.

On August 28, the MRI was approved. On August 30 the Pain Management Committee approved the medication Neurontin for Plaintiff's pain. On September 11, Plaintiff reported to the medical provider that the Neurontin was helping. On September 13, the MRI was completed. The next day Plaintiff requested an increase in his medication dosage. Based on the results of the MRI, on September 18, the medical provider requested a neurosurgery consult. Approval was received on September 20. On September 19, Plaintiff refused a nursing visit to discuss his pain because he believed the nurse would only talk and not provide meaningful treatment.

Plaintiff's appointment with the neurosurgeon was scheduled for December 2017. Although Petitioner continued to complain of pain, and continued to be seen by nursing staff or the medical provider during October and November, the plan of care remained the same: continue Neurontin.

Plaintiff filed a grievance contending that the delays in care constituted inadequate medical care. The grievance was denied at Step I. Defendant Bittner prepared the response at Step I; Defendant Smith reviewed the response. (Compl., ECF No. 1-1, PageID.16-19.) Defendant Aiken prepared the Step II response, also a denial. (*Id.,* PageID.22.) Registered Nurse R. Harbaugh and Grievance Section Manager Richard D. Russell signed the denial at Step III of the grievance process. (*Id.,* PageID.23.)

Plaintiff claims that Defendant Aiken's Step II response reveals that it is Corizon's policy to pursue conservative methods of treatment to save money. That information actually appears in the Step III response. (*Id.*) Plaintiff contends this policy was employed to the detriment of his medical care. Plaintiff complains that the delays resulting from the conservative method of treatment caused him significant pain.

Although Plaintiff's chronological complaint allegations end with the Step II grievance response on January 12, 2018, the documents attached to his complaint continue through April of 2018. On January 22, 2018, Plaintiff saw the neurosurgeon. The neurosurgeon recommended surgery and pain medications. Nonetheless, Plaintiff continued to complain of pain, some of the complaints relating to his back, during January, February, and March of 2018. The documents indicate that Plaintiff was scheduled for surgery, but the surgery was rescheduled because a more urgent case came in. It does not appear that Plaintiff has undergone surgery as of this date.

Plaintiff seeks compensatory and punitive damages from each Defendant and asks the Court to order Defendants to provide Plaintiff the necessary treatment.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

6

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants have violated the Eighth Amendment.

### III. Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the

7

detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations as to the conduct of each Defendant are conclusory and general. He attributes the denial of medical treatment to each Defendant, but he does not explain how each Defendant participated in his care or the denial of care. Only the documents attached to Plaintiff's complaint give some clue as to the role each Defendant played in the alleged denial of medical care.

### A. Heidi Smith

Plaintiff alleges that Defendant Smith was a supervisor, had a duty to provide health care services to Plaintiff, and was deliberately indifferent to his serious medical needs. (Compl., ECF No. 1, PageID.2.) That is the only specific mention of Defendant Smith in the complaint. The attached documents do not shed any light on Defendant Smith's involvement in Plaintiff's care. On December 4, 2017, Defendant Smith reviewed Defendant Bittner's response to Plaintiff's grievance at Step I. (Compl., ECF No. 1-1, PageID.16-19.) During April of 2018, Defendant Smith responded to Plaintiff's complaint to Corizon. (*Id.*, PageID.53.)

8

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Smith engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

### B. Heather Bittner

Plaintiff alleges that Defendant Bittner was a nurse, a nurse's aide, or a supervisor, that she had a duty to provide care to Plaintiff, and that she acted with deliberate indifference to his serious medical needs. There is no further mention of Defendant Bittner in Plaintiff's allegations. The attached documents, however, reveal that Bittner played some direct role in providing Plaintiff care.

On August 25, 2017, Defendant Bittner responded to Plaintiff's kite of the same date. (Compl., ECF No. 1-1, PageID.40.) By way of his kite, Plaintiff had asked the doctor to schedule an MRI and to submit his case to the Pain Management Committee. Defendant Bittner

9

responded by reminding Plaintiff he had an upcoming appointment with the doctor and could address his concerns with the doctor at that time. Plaintiff was seen by nursing staff each of the next two days. On August 28, the MRI was approved. On August 30, the Pain Management Committee approved Neurontin for pain. On August 31, Plaintiff saw the doctor.

Two weeks later, Defendant Bittner again responded to one of Plaintiff's healthcare requests. Plaintiff complained by kite on September 14 that he was suffering pain in his back and groin. He asked for an increase in pain meds. Defendant Bittner responded on September 15 that an appointment was scheduled with nursing on September 19; that the MRI results were not in yet, but that the results did not likely reveal an urgent condition because, if the results were urgent, the hospital would have called; and that the doctor could not increase his pain medication dose, only the Pain Management Committee could. (Compl., ECF No. 1-1, PageID.41.)

There are no other documents that reveal that Defendant Bittner played any further role in providing care to Plaintiff. As noted above, she responded to his grievance at Step I.

For the reasons stated above with respect to Defendant Smith, Defendant Bittner's role in responding to Plaintiff's grievance does not give rise to liability under § 1983. Moreover, with respect to Defendant Bittner's actions on August 25 and September 15, Plaintiff has failed to allege any facts from which the Court might infer deliberate indifference. Defendant Bittner promptly responded to each of Plaintiff's questions—she did not ignore them. It was not within her power to schedule the MRI or change Plaintiff's medication dosage, but she took the steps necessary to process Plaintiff's complaints so that they were addressed almost immediately. Accordingly, Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs against Defendant Bittner.

### C. Subrina Aiken

Plaintiff alleges only that Defendant Aiken responded to Plaintiff's grievance at Step II. For the reasons stated above with respect to Defendant Smith, Defendant Aiken's response to Plaintiff's grievance is not sufficient to give rise to a claim under § 1983.

### D. Peter Sices

Plaintiff alleges that Defendant Sices served as a medical provider at MTU, recklessly disregarded Plaintiff's quality of life, and delayed, and thus denied, Plaintiff adequate healthcare. (Compl., ECF No. 1, PageID.2.) That is the only specific mention of Defendant Sices in Plaintiff's allegations. Although Plaintiff's allegations disclose several contacts with a medical provider, there is nothing in the complaint to indicate that Defendant Sices was the medical provider.

The documents attached to Plaintiff's complaint reference Defendant Sices for the first time on January 27, 2018. As of that date, Plaintiff asked to schedule an appointment with Dr. Sices to discuss Plaintiff's pain management and asked Dr. Sices to schedule Plaintiff's surgery with the neurosurgeon. (Compl., ECF No. 1-1, PageID.45-48.) A kite from February 26, 2018, makes clear that Defendant Sices met with Plaintiff to discuss those issues. (*Id.,* PageID.49.) Plaintiff asked to see Defendant Sices again on March 16 and March 18, but not regarding back pain. (*Id.,* PageID.50-51.)

If Defendant Sices became involved in Plaintiff's care for the first time at the end of January 2018, Plaintiff has failed to demonstrate that Defendant Sices was deliberately indifferent to Plaintiff's back pain. At that time, the source of the pain had been identified by the MRI and Plaintiff had been prescribed Neurontin for pain with some success. Although Plaintiff

11

was awaiting surgery, there is nothing in the complaint to suggest that Defendant Sices played any role in delaying that surgery.

Even if Defendant Sices was the medical provider mentioned in Plaintiff's allegations from his first mention of back pain in April of 2017, Plaintiff has failed to demonstrate that Defendant Sices was deliberately indifferent to Plaintiff's back pain. Plaintiff was seen by medical providers[1] on multiple occasions over the period covered by his complaint. Plaintiff does not allege that the medical providers failed to provide treatment or ignored his complaints. Instead, he complains that they would not provide more effective pain medication and delayed ordering an MRI or a neurosurgical consult.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

---

[1] Although Plaintiff repeatedly asked to see a doctor, the responses typically reference that Plaintiff has seen or is scheduled to see a medical provider. That term is defined by MDOC policy directive to include "a licensed physician, physician assistant, or nurse practitioner in the State of Michigan." MDOC Policy Directive 03.04.100 (eff. 2/1/2015).

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

There can be no question that Plaintiff received medical treatment for his back pain. He was provided different medications, accommodations, and diagnostic tests. The medical providers' judgment that an MRI was not warranted until other options had been exhausted is not a denial of treatment. The plaintiff in *Estelle v. Gamble* also complained of back pain. *Estelle*, 429 U.S. at 107. The doctors treated inmate Gamble with bed rest, muscle relaxants, and pain relievers. Gamble wanted additional diagnostic tests and forms of treatment to alleviate his back pain. The Supreme Court concluded Gamble had failed to state a claim:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A

medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

*Estelle*, 429 U.S. at 107. Courts have routinely relied on *Estelle* to conclude that failure to order an MRI is not deliberate indifference. *See, e.g., Riddick v. Maurer*, __ F. App'x __, 2018 WL 1750582 (2d Cir. 2018); *Dykeman v. Ahsan*, 560 F. App'x 129 (3d Cir. 2014); *Laws v. Wexford Health Sources, Inc.*, 721 F. App'x 544 (7th Cir. 2018); *Tucker v. Meyer*, 165 F. App'x 590 (10th Cir. 2006); *Owen v. Corizon Health, Inc.*, 703 F. App'x 844 (11th Cir. 2017); *Thompson v. Corr. Med. Servs.* No. 09-14483, 2016 WL 1118639 (E.D. Mich. Mar. 21, 2016); *Brooks v. Jones*, 1:14-cv-631, 2014 WL 7212897 (W.D. Mich. Dec. 17, 2014).

The same reasoning applies with respect to any difference of opinion between Plaintiff and his medical providers regarding the potency of the pain relievers prescribed. The Sixth Circuit considered the difficult choices faced by medical providers when considering the possibility of prescribing narcotic medication:

> [T]he treatment of chronically suffering prisoners with narcotic medication does not fit neatly into our general Eighth Amendment test. Instead of weighing a single alleged risk of harm, against which the adequacy of official action can be judged, a reviewing court is asked to pass judgment on the attempts by prison medical staff to navigate between the Scylla of debilitating pain and the Charybdis of addiction to prescription drugs.
>
> There are occasions when an official has a subjective, good-faith belief that a particular response to a prisoner's substantial risk of serious harm might either 1) fail to mitigate the risk or 2) create or enable a different substantial risk of serious harm to the prisoner. In those situations, an official's decision not to authorize that particular response cannot be considered an act of deliberate indifference, and we are mindful of the possibility that a reasonable response to a risk may not be able to avert the ultimate harm. *See Farmer*, 511 U.S. at 844. These scenarios most commonly occur within the context of medical treatment, which is why both the Supreme Court and this court have rejected Eighth Amendment claims that second-guess the medical judgments of medical personnel. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Graham* [*ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)].

> In a series of recent unpublished decisions, this court has rejected a number of claims similar to those in Baker's complaint. In *Brock v. Crall*, 8 F. App'x. 439, 441 (6th Cir. 2001), we ruled that an Eighth Amendment complaint failed to state a proper claim for relief where the primary allegation was that two doctors failed to diagnose and treat a lower back ailment. In *Moses v. Coble*, 23 F. App'x. 391, 392 (6th Cir. 2001), where a prisoner alleged that he suffered pain from his serious back problems due to defendants' refusal to provide anything beyond over-the-counter pain medication, we affirmed the dismissal of the complaint as "clearly frivolous."

*Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015); *see also Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008) ("Mabry's claim against Dr. Antonini is merely a complaint that he did not order specific tests, or provide specific medications, treatment, or dosages. Such an assertion does not state a constitutional claim of deliberate indifference as to serious medical needs."); *Clark v. Frontera*, No. 2:06-cv-40, 2008 WL 3833407, at *5 (W.D. Mich. Aug. 13, 2008) ("In this case, Plaintiff was receiving Tylenol for his back pain, but claimed that he required stronger medication to relieve his pain . . . such claims do not rise to the level of an Eighth Amendment violation.").

Plaintiff's allegations show a course of treatment that became more aggressive as Plaintiff's pain persisted in the face of less drastic interventions. Despite the delays of which Plaintiff complains, Plaintiff was approved for an MRI and a neurosurgical consult within a few months. The treatment Defendants afforded Plaintiff here is a far cry from deliberate indifference to Plaintiff's serious medical needs. Thus, even if Defendant Sices stands in for all of Plaintiff's medical providers, Plaintiff has failed to state an Eighth Amendment claim against Defendant Sices.

### D.     Corizon

Corizon is susceptible to suit under § 1983 as one acting under color of state law. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison

inmates may be sued under § 1983 as one acting 'under color of state law.'"), *abrogation on other grounds recognized by Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014). As a corporate entity, Corizon can only act through its employees.[2] Nonetheless, Corizon cannot be held vicariously liable for the § 1983 violations of its employees under a theory of *respondeat superior*. *Street v. Corrections Corp.*, 102 F.3d 810, 818 (6th Cir. 1996) ("'A defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis. *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978). *Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'"). Plaintiff must allege first that his constitutional rights were violated and second that a Corizon policy or custom was the moving force behind the deprivation of his rights. *Baker v. Stevenson*, 605 F. App'x 514, 520 (6th Cir. 2015); *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012); *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).

Plaintiff alleges that Corizon has a policy of using conservative treatment methods first because of cost concerns. That policy is probably universal in the provision of healthcare. Taken to the extreme, however, it is possible such a policy might result in a deprivation of Plaintiff's rights. As detailed above, however, this is not even close to an extreme case. As explained above with respect to the liability of Defendant Sices, application of Corizon's policy here did not result in a deprivation of Plaintiff's rights. Accordingly, Plaintiff has failed to state a claim against Defendant Corizon.

---

[2] *See In re NM Holdings Co.*, LLC, 622 F.3d 613, 620 (6th Cir. 2010) (quoting *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 400 (Mich. 1991) ("'A corporation can only act through its employees . . . .'")).

16

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  September 13, 2018                    /s/ Paul L. Maloney
                                                              Paul L. Maloney
                                                              United States District Judge